UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Robert Alvarez<br>1419 Southeast 43rd Terrace<br>Ocala, FL 34471,<br>individually, and on behalf of all others<br>similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>CIGNA and<br>The Insurance Company of North America,<br><br>　　　　　　Defendants. | )<br>)  Civil Action No. 1:06CV00145<br>)<br>)<br>)<br>)<br>)<br>)  THE HONORABLE<br>)  EMMET G. SULLIVAN<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MOTION TO TRANSFER VENUE AND**
**REQUEST FOR ORAL HEARING**

Defendants CIGNA[1] and The Insurance Company of North America ("INA") (collectively, "Defendants"), by and through their undersigned counsel, move for an order transferring the venue of this proceeding to the District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a) and LCvR 7(a). In addition, Defendants believe that the Court should entertain this motion prior to the motions to dismiss this action that have been filed concurrently. Accordingly, Defendants request an oral hearing pursuant to LCvR 7(f). In support thereof, Defendants respectfully state the following:

---

[1] Defendant CIGNA is a registered service mark and is not a legal entity subject to suit. CIGNA does not admit that it was properly served, and has moved for dismissal on those grounds. CIGNA is not and was never an insurer that underwrote policies or otherwise engaged in conduct that would subject it to suit in this or any other court. Until it is dismissed on those grounds, CIGNA has joined INA in moving for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For purposes of convenience, and assuming the facts alleged in the Complaint as true, both CIGNA and INA will be referred to herein as the "Defendants."

1.      Plaintiff's Class Action Complaint (the "Complaint") was filed with this Court on January 27, 2006. A copy of the Complaint is attached to the Memorandum of Law accompanying this Motion as Exhibit B. Despite having chosen this Court for the venue of his action, Plaintiff's allegations in the Complaint make it abundantly clear that for the convenience of the parties and in the interests of justice this action should be transferred to the Eastern District of Pennsylvania.

2.      The transfer of venue provisions of 28 U.S.C. § 1404(a) grant the Court broad discretion to transfer any civil action to any other district where it could have been brought originally "for the convenience of the parties and witnesses, in the interest of justice."

3.      The facts, as alleged in the Complaint, coupled with the affidavit of Maria A. DaSilva-Neto (the "DaSilva-Neto Affidavit"),[2] attached to the Memorandum of Law accompanying this Motion as Exhibit A, establish that the action could have been brought in the Eastern District of Pennsylvania, and that the convenience of the parties militates that a transfer is in the interests of justice.

4.      Plaintiff Alvarez alleges that he is currently a resident of Florida. Complaint at ¶ 10. He alleges that at the time he purchased the long term care ("LTC") insurance coverage at issue from INA through the American Chemical Society, he was a resident of Maryland. *Id.*

5.      Plaintiff alleges that both CIGNA and INA are insurance companies headquartered in Philadelphia, Pennsylvania. *Id.* at ¶¶ 11, 12. Accordingly, Defendants could have been sued in the Eastern District of Pennsylvania. 28 U.S.C. § 1391(a)-(c) (2005).

---

[2] References to the DaSilva-Neto Affidavit shall be "DaSilva-Neto Aff. at __."

Furthermore, Plaintiff alleges that the LTC policy in question was "developed, marketed, sold and administered" by CIGNA and INA. Complaint at ¶ 13.[3]

6.  While there are numerous allegations regarding alleged omissions in the Complaint, the alleged wrongdoing relates to the pricing of the LTC policy and the subsequent actions of INA in administering and re-pricing the LTC policy:

> Despite CIGNA's and INA's affirmative representations to Alvarez and the Class regarding the LTC policies being guaranteed renewable policies that Alvarez and the Class could maintain for the remainder of their lives, the LTC policies were, in fact, defective from the outset. The policies were and [sic] underpriced, a condition which meant that the original premiums for the LTC policies would not be sufficient to support future claims on the LTC policies. However, in order for the LTC policies to remain in force as defendants originally represented to Alvarez and the Class, *it was CIGNA's and INA's plan* to pass the cost of the defective underpricing of the LTC polices back to Alvarez and the Class through premium increases.

*Id.* at ¶ 4 (emphasis added). The alleged wrongdoing in the sale of the LTC policy occurred while Plaintiff resided in Maryland.

> By selling the LTC policies to Alvarez and the Class, CIGNA and INA affirmatively represented that the LTC policies were valuable insurance policies that were developed and priced by expert actuaries and that the LTC policies were priced at levels designed to accumulate sufficient reserves adequate to pay valid claims made by policyholders.

*Id.* at ¶ 28.

---

[3] As stated above, CIGNA is not an entity which is subject to suit or to the jurisdiction of this Court. Thus, venue of a suit against CIGNA cannot be proper in any district. INA did issue the Plaintiff's LTC Master Policy to a trust situated in the District of Columbia, and INA does not challenge that venue could be proper in this district. Nevertheless, for the reasons stated herein, and in Defendants' Memorandum in Support of Motion to Transfer Venue, venue is more convenient in the Eastern District of Pennsylvania. Moreover, Plaintiff's allegations that a "substantial part of the events and omission [sic] giving rise to this claim occurred in the District of Columbia" (Complaint at ¶ 18) is belied by the overwhelming body of facts alleged in the Complaint that virtually every alleged representation was made to him while he was a Maryland resident, and that all of the events related to the setting of premiums on the policy at issue and the increase in such premiums took place in Philadelphia. *See also generally,* DaSilva-Neto Aff.

7.  Additionally, Plaintiff alleges that the LTC policy was "lapse supported." *Id.* at ¶ 34. Alvarez alleges that the pricing of the LTC policy did not take into account "the risks associated with the way policies were underwritten." *Id.* at ¶ 35.

8.  Plaintiff alleges that Defendants wrongfully omitted to tell him that they had stopped selling the LTC policy in 1992 ("closed the block"), and that this information was material because precluding new insureds from purchasing policies "decreases the size of the insurance coverage pool as the policyholders' age and claims experience increases." *Id.* at ¶ 40.

9.  Plaintiff also alleges that Defendants were aware of problems with the LTC policies in 1997 and conducted a review of those policies in that year, but failed to apprise him of those concerns. *Id.* at ¶ 45. Plaintiff further alleges that Defendants commissioned another review by an outside actuarial consultant and never informed him of the review or Defendants' alleged concern about the LTC policy. *Id.* at ¶ 46. As a result, Plaintiff alleges, Defendants wrongfully instituted premium increases in 2004 in an alleged effort to "recoup their underfunded reserves." *Id.* at ¶ 47.

10. As the DaSilva-Neto Affidavit avers, virtually every action allegedly taken by INA in the Complaint took place, if at all, in Philadelphia, Pennsylvania.

11. At all times relevant to the Complaint, INA maintained its principal place of business in Philadelphia, Pennsylvania. DaSilva-Neto Aff. at ¶ 3. INA issued the LTC policy from Philadelphia to the National Group Benefits Insurance Trust (the "Trust"). DaSilva-Neto Aff. at ¶ 4. Plaintiff purchased coverage under the LTC policy while he resided in Maryland. DaSilva-Neto Aff. at ¶ 4.

12. The decision to issue the LTC policy was made by INA in Philadelphia. DaSilva-Neto Aff. at ¶ 5. The decision to include the American Chemical Society as one of the groups

4

whose members would be eligible for coverage under the LTC policy was made by INA in Philadelphia. DaSilva-Neto Aff. at ¶ 5.

13.  The final decisions with regard to pricing of the policy were made by INA in Philadelphia. DaSilva-Neto Aff. at ¶ 5. Similarly, the decision to underwrite the American Chemical Society for the Master LTC policy was made by employees of Life Insurance Company of North America ("LINA") in Philadelphia, acting on behalf of INA in Philadelphia. DaSilva-Neto Aff. at ¶ 5. Furthermore, the decision to "close the block," or cease marketing and selling coverage under the LTC policies was made in Philadelphia. DaSilva-Neto Aff. at ¶ 5.

14.  The internal review of the pricing in 1997 alleged in the Complaint was performed by employees of LINA on behalf of INA in Philadelphia. DaSilva-Neto Aff. at ¶ 6. The decision to have outside actuaries review reserves for the LTC policies in 2003 was likewise made in Philadelphia by LINA employees on behalf of INA pursuant to a contract with INA. DaSilva-Neto Aff. at ¶ 6.

15.  Finally, the decision to increase the premium on the LTC policy, including the premium on Plaintiff's coverage thereunder, was made in Philadelphia. DaSilva-Neto Aff. at ¶ 7.

16.  The only connection to the District of Columbia is the issuance of the policy to the Trust in the District of Columbia. However, while the Master Policy was issued in the District of Columbia, each insured was issued a certificate evidencing his/her purchase of coverage under the LTC policy. The misrepresentation and omission alleged by Plaintiff, while strongly denied by Defendants, had to have taken place in Maryland. These facts are admitted by Plaintiff in the Complaint, which alleges that Plaintiff's certificate was issued to him in

Maryland. Complaint at ¶ 23. Thus, the laws of Maryland will be most relevant to Plaintiff's claims of actual and constructive fraud, which predominate the issues raised in the Complaint.

17.  In short, there is a tenuous connection between the claims raised in the Complaint and the District of Columbia. Moreover, the overwhelming numbers of witnesses and relevant documents are in the Eastern District of Pennsylvania.

18.  Furthermore, the public interest considerations weigh in favor of transfer. The laws of Maryland will govern the basic claims made in the Complaint. This Court has no greater familiarity with the laws of Maryland than does the putative transferee court. Furthermore, the District of Columbia has limited local interest in the action brought by the Plaintiff. In contrast, since INA's principal place of business is in Philadelphia, and the majority of operative acts of Defendants took place in Philadelphia, the Eastern District of Pennsylvania has a greater interest.

19.  Finally, the congestion of the Courts' calendars should not impede transfer. There is no evidence that this Court's docket is in any way less burdened than the docket of the Eastern District of Pennsylvania.

20.  Local Rule 7(f) provides that a "party may in a motion or opposition request an oral hearing, but its allowance shall be within the discretion of the court." LCvR 7(f). Defendants believe that it is in the interest of justice that the Court entertain this motion to transfer venue prior to the motions to dismiss that have been filed concurrently. Accordingly, Defendants request an oral hearing.

### Certification of Counsel

The undersigned hereby certifies that he has conferred with counsel pursuant to Local Rule 7(m), and the parties were unable to come to agreement. The motion is therefore opposed.

**WHEREFORE**, Defendants CIGNA and The Insurance Company of North America respectfully request that the Court enter an Order transferring this action to the District Court for the Eastern District of Pennsylvania

Dated: March 22, 2006                    Respectfully submitted,

/s/ James F. Jorden
James F. Jorden (D.C. Bar No. 37598)
Raul A. Cuervo (D.C. Bar No. 463718)
JORDEN BURT LLP
1025 Thomas Jefferson Street, N.W.
Suite 400 East
Washington, DC  20007-5208
Telephone: 202-965-8100
Facsimile:  202-965-8104

Counsel for Defendants CIGNA and The Insurance Company of North America

#153939 v3