UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Robert Alvarez<br>1419 Southeast 43rd Terrace<br>Ocala, FL 34471,<br>individually, and on behalf of all others<br>similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>CIGNA and<br>The Insurance Company of North America,<br><br>                Defendants. | Civil Action No. 1:06CV00145<br><br><br><br><br><br>THE HONORABLE<br>EMMET G. SULLIVAN |

## MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE

Defendants CIGNA[1] and The Insurance Company of North America ("INA") (collectively, "Defendants"), respectfully submit this Memorandum in support of the Motion to Transfer Venue from this Court to the District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404 (a) and LCvR 7(a). The facts alleged in the Complaint, and treated as true for purposes of this motion, leave little doubt that nearly all of the acts complained of in the Complaint took place in Pennsylvania or Maryland. Furthermore, those allegations and the affidavit of Maria DaSilva-Neto (the "DaSilva-Neto Affidavit")[2] demonstrate that the witnesses

---

[1] Defendant CIGNA, which is a registered service mark, does not admit that it is an entity subject to suit, or that it was properly served, and has moved for dismissal on those grounds. In addition, both CIGNA and INA have moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For purposes of this motion, both CIGNA and INA will be referred to as the "Defendants." By filing this motion, CIGNA does not admit that it is an entity subject to suit. The Defendants respectfully request that the Court decide the Motion to Transfer before the Motions to Dismiss.

[2] The DaSilva-Neto Affidavit is attached hereto as Exhibit A. References to the DaSilva-Neto Affidavit shall be "DaSilva-Neto Aff. at ___".

and documents relevant to this action are located outside of this District, primarily in Philadelphia, Pennsylvania. Thus, a transfer to that district is in the interests of justice.

## I.  INTRODUCTION

Plaintiff's Class Action Complaint (the "Complaint") was filed with this Court on January 27, 2006.[3] Despite having chosen this venue to bring this action, Plaintiff's allegations in the Complaint make it abundantly clear that for the convenience of the parties and in the interests of justice this action should be transferred to the Eastern District of Pennsylvania.

### A.  The Parties

#### 1.  The Named Plaintiff

The named Plaintiff, Robert Alvarez ("Plaintiff"), is currently a resident of Florida, but was a resident of Maryland when he applied for and purchased long-term care ("LTC") coverage in 1992 from INA. Complaint at ¶ 10. Plaintiff was 71 when he purchased this coverage and is currently 84 years old. *Id.* Plaintiff's coverage became effective on or about April 1, 1992. *Id.*

#### 2.  Defendants

Defendant, The Insurance Company of North America ("INA"), is an insurance company headquartered in Philadelphia, Pennsylvania. *Id.* at ¶ 12; DaSilva-Neto Aff. at ¶ 3. INA is the insurer under the Master Policy issued to the National Group Benefits Insurance Trust (the "Trust") through which LTC coverage was made available to Plaintiff. Defendant, CIGNA,[4] is alleged to be a publicly traded insurance company headquartered in Philadelphia, Pennsylvania. Complaint at ¶ 11. It is further alleged that "[a] division of CIGNA, known as CIGNA Group Insurance and/or INA developed, marketed, sold and administered" the LTC coverage sold to Plaintiff and other members of the purported class. *Id.* at ¶ 13.

---

[3]  A copy of the Complaint is attached hereto as Exhibit B.
[4]  As set forth in the Motion of Specially Appearing Defendant CIGNA to Quash Summons and to Dismiss the Complaint, filed concurrently herewith, no such named entity exists.

2

### 3. The LTC Insurance

LTC insurance was first introduced into the insurance market in the late 1980s. CIGNA is alleged in the Complaint to have begun selling such insurance in 1988. Complaint at ¶ 19. LTC insurance is intended to provide benefits for certain types of long-term medical, rehabilitative, therapeutic, maintenance and personal care expenses arising out of conditions specified in the insurance policy (*i.e.*, physical and mental impairments that cause the loss of the ability to perform certain activities of daily living) and which are incurred in a setting other than a hospital (*i.e.*, a nursing home and/or personal home).

Plaintiff purchased LTC coverage from INA through the Master Policy, which was a group policy issued to the Trust, and pursuant to which individual coverage was made available to certain persons associated with the American Chemical Society ("ACS"). *Id.* at ¶ 10 . When Plaintiff decided to purchase LTC coverage through the Master Policy, he received a certificate from INA (the "Certificate") which summarized his coverage. The Certificate made it clear that the Master Policy, the application of the Master Policyholder (*i.e.*, the Trust), the subscription agreement of the ACS, and, if required, the certificateholder's application constituted the entire contact between the parties.

### 4. The Complaint's Allegations

The crux of the claims brought by the Plaintiff is that INA intentionally underpriced the LTC coverage sold to Plaintiff and other members of the purported class with the undisclosed "plan to pass the cost of the defective underpricing of the LTC policies back to Plaintiff and the class through premium increases." Complaint at ¶ 4. The Complaint further alleges that INA ceased selling LTC coverage in 1992 (known as "closing the block" of business) without disclosing such fact to policyholders. *Id.* at ¶ 8. The Complaint avers that "closing the block can

lead to a 'death spiral' that will guarantee that the premium rates on the LTC policies will increase at an even greater rate." *Id.*

The transfer of venue provisions of 28 U.S.C. § 1404(a) grant the Court broad discretion to transfer any civil action to any other district where such action could have been brought originally, "for the convenience of the parties and witnesses, in the interest of justice." *Brannen v. Nat'l R.R. Passenger Corp.*, 403 F. Supp. 2d 89, 91 (D.D.C. 2005) (quoting 28 U.S.C. § 1404(a) (2005)). While the moving party bears the burden of establishing that transfer is proper, *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996), "[s]ection 1404(a) 'vests discretion in the district court to adjudicate motions to transfer according to [an] individualized, case-by-case consideration of convenience and fairness.'" *Brannen*, 403 F. Supp. 2d at 91 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988)). All of the factors considered by the courts to determine whether a transfer is in the interests of justice weigh in favor of a transfer of this action to the Eastern District of Pennsylvania. Accordingly, for the reasons stated herein and in the Motion, this action should be transferred to the Eastern District of Pennsylvania.

## II. THE ACTION COULD HAVE BEEN BROUGHT IN THE EASTERN DISTRICT OF PENNSYLVANIA

Federal Courts considering a motion to transfer venue first seek to determine whether the action could have been brought in the transferee district. That requirement is easily met here. Section 1391(a)(1) permits a plaintiff to bring a diversity action in "a judicial district where any defendant resides, if all defendants reside in the same state." 28 U.S.C. § 1391 (2005). Pursuant to 28 U.S.C. § 1391(c), a corporation resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Thus, venue is proper in any jurisdiction where the corporation has "purposely avail[ed] itself of the privileges of conducting

4

business in the forum state." *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 32 (D.D.C. 2004) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The Complaint alleges that at all relevant times INA was "headquartered in Philadelphia, Pennsylvania." *See* Complaint at ¶¶ 11-12. The DaSilva-Neto Affidavit confirms that INA's primary place of business is in Philadelphia. DaSilva-Neto Aff. at ¶ 3. There can be no disagreement that INA is subject to personal jurisdiction in Pennsylvania and, therefore, resides in Pennsylvania. Plaintiff could have brought this action in the Eastern District of Pennsylvania.

The Plaintiff could have also brought this action in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b), which permits a plaintiff to bring a diversity action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." While the Plaintiff was a resident of Maryland when he purchased coverage under the Master Policy at issue, the actual pricing of the policy and all actions of INA relating to pricing necessarily took place in Philadelphia, Pennsylvania. The allegations of the Complaint reflect that those pricing decisions are central to the claims.

> Despite CIGNA's and INA's affirmative representations to Alvarez and the Class regarding the LTC policies being guaranteed renewable policies that Alvarez and the Class could maintain for the remainder of their lives, the LTC policies were, in fact, defective from the outset. The policies were and [sic] underpriced, a condition which meant that the original premiums for the LTC policies would not be sufficient to support future claims on the LTC policies. However, in order for the LTC policies to remain in force as defendants originally represented to Alvarez and the Class, *it was CIGNA's and INA's plan* to pass the cost of the defective underpricing of the LTC polices back to Alvarez and the Class through premium increases.

Complaint at ¶ 4 (emphasis added).

While the Defendants deny that the policies were underpriced, or that there was ever any "plan" to pass on any alleged underpricing to Plaintiff or any putative class member, what is

patently obvious is that if any such "plan" had existed, it would have been put in place at the corporate headquarters of INA.[5] Indeed, as discussed at further length below, virtually all of the alleged wrongdoing in the Complaint is alleged to have taken place at the Defendants' headquarters in Philadelphia or in Maryland. Accordingly, the action could have been brought in either the Eastern District of Pennsylvania or the District of Maryland. Also of crucial importance to the Court's analysis of the Section 1404(a) factors, nearly all of the witnesses and documents relevant to the claims are located in Philadelphia.

### III. THE RELEVANT CONSIDERATIONS IN THIS ACTION WEIGH OVERWHELMINGLY IN FAVOR OF TRANSFER TO THE EASTERN DISTRICT OF PENNSYLVANIA

In deciding a motion to transfer based on the convenience of the parties and the interests of justice, courts examine six private-interest considerations and three public-interest considerations. *Trout Unlimited*, 944 F. Supp. at 16. The private-interest considerations are:

> (1) plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants;
>
> (2) defendant's choice of forum;
>
> (3) whether the claim arose elsewhere;
>
> (4) convenience of the parties;
>
> (5) convenience of the witnesses; and
>
> (6) ease of access to sources of proof.

*Id.* (citations omitted). After examining these private-interest considerations, the Court considers the following public-interest considerations: "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts;

---

[5] Again, CIGNA is not and was never an insurer who underwrote policies or made decisions that could subject itself to suit. CIGNA is simply a registered service mark and is not an entity subject to suit.

and (3) the local interest in deciding local controversies at home." *Brannen*, 403 F. Supp. 2d at 92.

### A. Private-Interest Considerations

#### 1. Choice of Forum

Plaintiff's choice of forum is normally given some deference, but such deference is substantially reduced "when the forum preferred by plaintiff is not his home forum." *Brannen*, 403 F. Supp. 2d at 93. Plaintiff's preference is also "mitigated where the plaintiff's choice of forum has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter.'" *Id.* (quoting *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 165 (D.D.C. 1995)). The Plaintiff, Mr. Alvarez, was a resident of Maryland at the time he purchased his policy. He is now a Florida resident. Because the Plaintiff has never been a resident of the District of Columbia, and the only connection between the District of Columbia and this action is that the LTC group policy was issued to the Trust in the District, the Plaintiff's choice of forum should be given little, if any, weight.

In contrast, a defendant's choice of forum is strengthened when relevant facts, documents, events and witnesses are located in the forum. *Sheldon v. Nat'l R.R. Passenger Corp.*, 355 F. Supp. 2d 174, 179 (D.D.C. 2005); *Brannen*, 403 F. Supp. 2d at 93. Since it is admitted that INA is headquartered in Pennsylvania, many of the alleged acts took place there, and the overwhelming majority of the documents and witnesses are located in Pennsylvania, INA's choice of forum is a factor that weighs strongly in favor of transfer to the Eastern District of Pennsylvania.

### 2. The Claims Alleged by Plaintiff Did Not Arise in the District of Columbia

"Venue determinations of where a claim arose are based on a 'commonsense appraisal' of events having operative significance in the case." *Donnell v. Nat'l Guard Bureau*, 568 F. Supp. 93, 94 (D.D.C. 1983). It is possible that a claim might properly be deemed to have arisen in more than one jurisdiction. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 185 (1979). In the instant action, the alleged claims arose in Pennsylvania and Maryland. First, INA developed the Master Policy and made its actuarial and pricing decisions regarding the Master Policy at its headquarters in Philadelphia. *See Berenson v. Nat'l Fin. Servs., LLC*, 319 F. Supp. 2d 1, 4 (D.D.C. 2004) (finding that claims arose in Massachusetts because "corporate decisions underlying plaintiffs' claims were made in Boston"). Second, any omissions with respect to the Plaintiff would have taken place in Maryland, where he resided when he purchased coverage under the Master Policy. Thus, while one can conclude that the alleged claims arose in Pennsylvania and Maryland, the claims did *not* arise in the District of Columbia. Accordingly, this consideration further supports a transfer.

### 3. The Convenience of the Parties and Witnesses Weighs in Favor of Transfer

Transferring this action to the Eastern District of Pennsylvania would not result in any greater inconvenience to the Plaintiff than the forum he selected because he is currently a Florida resident. *See* Complaint at ¶ 10. Thus, he will not suffer any prejudice if this action is transferred from the District of Columbia to the Eastern District of Pennsylvania. On the other hand, because of the location of witnesses and documents, the transfer will increase significantly the convenience of the Defendants. As the DaSilva-Neto Affidavit avers, virtually all of the documents relating to this action are in Philadelphia. DaSilva-Neto Aff. at ¶ 8.

The convenience of the witnesses also weighs in favor of transfer. The Court considers this factor "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Brannen*, 403 F. Supp. 2d at 94. As stated in the affidavit of DaSilva-Neto the expected witnesses, former and current employees of the Life Insurance Company of North America ("LINA"), who administered the LTC policy in question on behalf of INA, reside in or near Philadelphia, Pennsylvania. DaSilva-Neto Aff. at ¶ 9. Since Philadelphia is more than 100 miles from the District of Columbia, those witnesses cannot be compelled to testify in this venue. Fed. R. Civ. P. 45. While it may be premature to determine how many witnesses are needed, the allegations of the Complaint indicate that significant time will be spent deposing witnesses in Philadelphia and few, if any, outside of that forum. Accordingly, taking the inconvenience of the Defendants' witnesses into consideration, transfer is proper. *Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44, 51 (D.D.C. 2005).[6]

### 4.  Ease of Access to Sources of the Proof is Greater in Philadelphia, Pennsylvania

The fact that the overwhelming majority of the relevant documents and witnesses relating to this action are located in Philadelphia weighs in favor the transfer to the Eastern District of Pennsylvania. DaSilva-Neto Aff. at ¶¶ 8-9. *See also Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 73 (D.D.C. 2005) (the accessibility to sources of proof factor weighed in favor of transfer to Maryland since plaintiff's records were in Maryland); *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 8 (D.D.C. 1996) (transfer was proper where a majority of the witnesses and records were located in Maryland).

---

[6]  Further, "[a]ny inconvenience to Plaintiff's counsel caused by the transfer is not a factor that carries considerable weight in the Court's determination of whether or not to grant a motion to transfer pursuant to section 1404(a)." *McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 40 (D.D.C. 2003).

9

If this action remains in the District of Columbia, the Court will only have subpoena power over residents within 100 miles from the District of Columbia. *See* Fed. R. Civ. P. 45(b)(2). Only one possible witness, the Trust, resides in the District of Columbia. The Plaintiff resides in Florida. A Pennsylvania district court would have subpoena power over all Pennsylvania residents. *Brannen*, 403 F. Supp. 2d at 94-95. *See also* Fed. R. Civ. P. 45(b)(2) ("[A] subpoena may be served at any place within the district of the court by which it issued, or at any place without the district that is within 100 miles . . . .").

Virtually all of the documents relating to the pricing decisions and decisions to raise the premiums for Plaintiff's coverage under the Master Policy are located in Philadelphia. DaSilva-Neto Aff. at ¶ 8. Likewise, all the documents relating to "closing the block" of business are in Philadelphia. *Id.* Under any analysis of this factor, the Eastern District of Pennsylvania is the better forum.

### B. Public-Interest Considerations/Factors

#### 1. Transferee's Familiarity with the Governing Laws

The public interest is "best served by having a case decided by the federal court in the state whose laws govern the interests at stake." *Kafack*, 934 F. Supp. at 8. Consequently, the Court will conduct the District of Columbia's choice of law analysis. *McClamrock*, 267 F. Supp. 2d at 41 (citing *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997)). First, the Court must determine "whether there is a conflict in the potentially applicable legal standards of the two jurisdictions in question." *Wright v. Sony Pictures Entm't, Inc.*, 394 F. Supp. 2d 27, 31 (D.D.C. 2005). Next, if there is a conflict, the Court will employ the District of Columbia's modified "governmental interest analysis" to determine which jurisdiction's policies would be most advanced by the application of that jurisdiction's laws. *Minebea Co., Ltd. v. Papst*, 377 F. Supp. 2d 34, 37 (D.D.C. 2005) (citing *Bledsoe v. Crowley*, 849 F.2d 639, 641

(D.C. Cir. 1988)). In other words, the Court will determine the jurisdiction with the "most significant relationship." *Id.*

The Court, however, is not "bound to decide all issues under the local law of a single [s]tate." *Keene Corp. v. Ins. Co. of N. Am.*, 597 F. Supp. 934, 941 (D.D.C. 1984). Rather, each issue must be given "separate consideration because of the varying interests involved." *Id.* Applying those principles, Defendants submit that Plaintiff's claims should be governed by Maryland law.[7] While Maryland may have a strong interest in the claims, the Pennsylvania district courts are equally capable of applying Maryland law as this Court. Moreover, because INA's principal place of business is in Philadelphia, Pennsylvania will have a strong interest as well. In any event, however, it is clear that the laws of the District of Columbia will not apply to any of the claims.[8]

### 2. Congestion of the Courts' Calendars

The congestion of the transferor or transferee court's dockets does not impede transfer. This Court has previously commented that there is no reason to believe that the docket of another court is more congested than the instant Court's docket. *O'Shea v. Int'l Bhd. of Teamsters, Local Union No. 639*, No. Civ.A. 04-0207(RBW), 2005 WL 486143, *4 n.4 (D.D.C. Mar. 2, 2005)

---

[7] Under this forum's choice of law principles, Defendants submit that each of Plaintiff's claims, all of which are fraud-based, should be decided pursuant to the laws of the State of Maryland where (i) Plaintiff resided when he purchased his LTC coverage, (ii) he applied for such coverage, and (iii) he would have received and acted upon any of the purported non-disclosures. *See Keene*, 597 F. Supp. at 944 (to determine which jurisdiction has the most significant relationship regarding the Plaintiff's fraud claims, the Court will look at the following factors set forth in § 148 of the Restatement (Second) of Conflict of Laws: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the misrepresentations, (c) the place where the defendant made the representations, (d) the domicile, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant).

[8] In Claim No. 3 of the Complaint, Plaintiff asserts that the D.C. Consumer Procedures and Protection Act ("CPPA"), D.C. Code §§ 28-3901 to 28-3913 (2001), is applicable. (Neither Plaintiff nor Defendant is a resident of the District.) Plaintiff applied for his LTC coverage in the State of Maryland, and his insurance certificate was delivered in that state. Under such circumstances, the CPPA should not apply to the purported misrepresentations alleged in Claim No. 3.

11

(citing *Liban v. Churchey Group II, LLC*, 305 F. Supp. 2d 136, 143 (D.D.C. 2004)). Similarly, there is no reason to believe that the docket of the Eastern District of Pennsylvania is more congested than this Court's docket. Indeed, an early transfer is warranted inasmuch as the instant Court has not familiarized itself with the underlying merits, and no delay in the proceedings will result if the case is transferred to Pennsylvania. *See Brannen*, 403 F. Supp. 2d at 96.

### 3. Pennsylvania Has Greater Interest in the Controversies Raised by the Complaint

"There is a local interest in having localized controversies decided at home." *Adams v. Bell*, 711 F.2d 161, 167 (D.C. Cir. 1983) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947), *superseded by statute on other grounds*). The District of Columbia, however, has little local interest in this action since there are minimal connections between this action and the District. Since INA's corporate offices are located in Philadelphia and the majority of the alleged operative events took place in Philadelphia, the Eastern District of Pennsylvania has a greater interest in this case than the District of Columbia. *See Schmidt v. Am. Inst. Of Physics*, 322 F. Supp. 2d 28, 36 (D.D.C. 2004) (finding that the state of Maryland had a greater interest than the District of Columbia because the defendant's "corporate offices are in Maryland and the majority of operative events occurred in Maryland"). *See also In re AT&T Access Charge Litig.*, No. Civ.A. 05-1360 ESH, 2005 WL 3274561, *5 (D.D.C. Nov. 16, 2005) (New Jersey had a much stronger interest in resolving the dispute because it had "a significant interest in allegations of fraudulent activity by its corporations and certainly has a greater interest than the District of Columbia, where very few of the alleged harms were manifested and most of the parties have virtually no ties.").

That Maryland might also have a strong interest in the litigation because the Plaintiff received the relevant insurance certificate in Maryland while he was a Maryland resident, *see Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52 n.8 (D.D.C. 2000), does not militate against transfer to Pennsylvania. Pennsylvania has a strong local interest in the controversy because the majority of the operative events occurred in Pennsylvania. What is abundantly clear is that the District of Columbia is not the most convenient forum, and that a weighing of the relevant considerations points to a transfer of venue to the Eastern District of Pennsylvania.

## IV.   CONCLUSION

**WHEREFORE**, Defendants CIGNA and The Insurance Company of North America respectfully request that the Court enter an Order transferring this action to the District Court for the Eastern District of Pennsylvania.

Dated: March 22, 2006                              Respectfully submitted,


/s/ James F. Jorden
James F. Jorden (D.C. Bar No. 37598)
Raul A. Cuervo (D.C. Bar No. 463718)
JORDEN BURT LLP
1025 Thomas Jefferson Street, N.W.
Suite 400 East
Washington, DC  20007-5208
Telephone: 202-965-8100
Facsimile:  202-965-8104

Counsel for Defendants CIGNA and The Insurance Company of North America

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing Motion To Transfer Venue And Request For Oral Hearing, Memorandum In Support Of Motion To Transfer Venue and Proposed Order were served via electronic filing on this 22nd day of March, 2006, upon the following:

>Edgar N. James, Esq.
>JAMES & HOFFMAN, P.C.
>1101 Seventeenth St., N.W., Suite 510
>Washington, D.C. 20036

and by first class mail, postage paid, on the following:

>Allan Kanner, Esq.
>Conlee S. Whiteley, Esq.
>KANNER & WHITELEY
>701 Camp Street
>New Orleans, LA 70130

>Timothy Q. Purdon, Esq.
>Monte L. Rogneby, Esq.
>VOGEL LAW FIRM
>200 North 3rd Street, Suite 201
>P.O. Box 2097
>Bismarck, ND 58502-2097

>Perry Pearce Benton, Esq.
>32516 Sandpiper Drive
>Orange Beach, AL 36561-5728

>/s/ James F. Jorden
>James F. Jorden

#153447 v4