UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Robert Alvarez,<br>1419 Southeast 43rd Terrace,<br>Ocala, FL 34471,<br>individually, and on<br>behalf of all others similarly<br>situated,<br><br>            Plaintiff,<br><br>  v.<br><br>CIGNA and<br>The Insurance Company of<br>North America,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:06CV00145<br><br><br><br><br><br>THE HONORABLE<br>EMMET G. SULLIVAN |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE

Plaintiff, Robert Alvarez (hereinafter referred to as "Alvarez" or "Plaintiff"), individually and on behalf of all others similarly situated (hereinafter referred to as "the Class") by his undersigned counsel submit this Memorandum of Points and Authorities in Opposition to Defendants' Motion to Transfer to the District Court for the Eastern District of Pennsylvania pursuant to section 1404(a) of 28 U.S.C.

### INTRODUCTION

Transfer of this case to the Eastern District of Pennsylvania is contrary to the interest of justice and should be denied. Defendants have failed to meet their burden of proving that the public and private interests in this litigation favor transfer. Plaintiff's allegations of misrepresentation, fraud, bad faith and unfair trade practices by Defendants in the sale of group long-term care ("LTC") insurance arose in the District of Columbia. Other than general statements in the affidavit of Maria

A. DaSilva-Neto and arguments put forth in Defendant's Motion to Transfer and supporting memorandum regarding the inconvenience of witnesses in Defendants' corporate headquarters in Philadelphia, Defendants have failed to show the unavailability of any non-party witnesses to testify at trial in the District of Columbia. In today's legal environment, depositions and document production outside the district where the litigation is pending are not uncommon and not an inconvenience to counsel for the parties, especially for a large corporation which surely litigates all over the country on a regular basis. The balance of these private interest factors does not support a transfer.

Additionally, the public interest does not favor transfer of this litigation to Philadelphia. First, this Court is more familiar with the laws of the District of Columbia which apply to Defendants' group LTC insurance policy that was entered into and delivered to the American Chemical Society ("ACS") in the District. Second, transfer to the Eastern District of Pennsylvania may result in delay of this litigation for the 85 year old Plaintiff because the number of cases filed in the Eastern District of Pennsylvania is significantly more than the number filed in this District. Third, this Court has a local interest in this litigation because the Defendants chose to enter into an agreement with ACS, an organization headquartered in the District of Columbia to sell group LTC insurance.

Plaintiff's Complaint was filed on January 27, 2006 in federal court for the District of Columbia by Plaintiff Robert Alvarez on behalf of a class of individuals, many of them members of ACS who purchased group LTC insurance between 1988 and 1992 from the Defendants through ACS and continued to pay annual and semi-annual premiums through 2004 when their annual premiums were increased eight (80) percent by Defendants. These polices were issued and delivered in the District of Columbia.

On March 22, 2006 Defendants filed its Motion to Transfer Venue to the Eastern District of Pennsylvania allegedly for the convenience of witnesses at Defendants' headquarters in Philadelphia who made decisions regarding the pricing of premiums for the ACS group LTC policy purchased by the Plaintiff and the 2003 decision to raise the group LTC insurance premiums 80 percent in 2004.

## FACTS

The Insurance Company of North America ("INA") and CIGNA Corporation d/b/a CIGNA Group Insurance (hereinafter "CIGNA") (collectively, "Defendants") began marketing and selling group LTC insurance in 1988 to several groups, including ACS, which is headquartered at 1155 16th Street NW in the District of Columbia. Prior to selling the LTC policies to ACS members, Defendants entered into a Participating Organization Agreement ("POA") with ACS which provided the terms under which the group LTC policies could be sold and marketed to members of ACS. In addition to the POA, Defendants issued a group LTC policy or "MASTER POLICY" to the Trustee of the National Group Benefits Insurance Trust, with the American Chemical Society included as a Participating Organization. This group policy clearly states that the INA Policy was delivered in the District of Columbia.

In 1992, Plaintiff Robert Alvarez purchased a group LTC insurance policy through ACS that was underwritten by Defendants when he was a 71 years old resident of Gaithersburg, Maryland. The application form that Alvarez completed stated that it was an ACS Insurance Plan called "The Independence Long-Term Care Policy" underwritten by Defendants. After the policy was accepted, Alvarez's annual premium was $1,188.00. Prior to Alvarez's purchase of the ACS group LTC plan underwritten by Defendants, Alvarez received two form letters from ACS: (1) April 1991 letter from Newman M. Bortnick, Chairman of the ACS Board of Trustees, Group Insurance Plans, ACS, 1155 Sixteenth Street N.W., Washington, D.C. informing "Colleague" that ACS has found a guaranteed

renewable LTC plan for its members underwritten by Defendants, *see* Exhibit A, and (2) January 1992 letter from Newman M. Bortnick, Chairman of the ACS Board of Trustees Group Insurance Plans, ACS, 1155 Sixteenth Street N.W., Washington, D.C., addressed to Colleague enclosing ACS Group Insurance Plan "The Independence Long-Term Care Policy" underwritten by Defendants. *See* Exhibit B.

Shortly after Plaintiff purchased Defendants' group LTC policy through ACS, Defendants closed the block of group LTC policies and ceased selling group LTC insurance to ACS members. Defendants did not disclose the adverse impact of this action to ACS or its LTC group policyholders. In 1997, Defendants conducted an internal review of its group LTC policies to determine whether the premium levels were adequate, but did not disclose the results of the study to its group LTC policyholders in annual or semi-annual renewal notices for premium payments. Several years later another study of premium adequacy was conducted by an outside actuarial firm. As a result, in 2003, Defendants' decided to increase premiums eighty (80) percent on the group LTC policies, including the policy purchased by Alvarez through ACS. Defendants did not notify Alvarez or any other group LTC policyholders until the eighty (80) percent premium increase was applied to renewals in 2004.

At no time after the sale of the group LTC policy to Alvarez and the class did Defendants disclose their concerns about premium adequacy and higher than expected persistency for these policies to policyholders. Instead, when annual and semi-annual uniform renewal letters were sent to Alvarez and the class by Defendants through ACS, policyholders were encouraged to renew their valuable guaranteed renewable policies. In an April 2003 letter from Peter A. Christie, Chair of ACS Board of Trustees Group Insurance Plans, ACS, 1155 Sixteenth St N.W., Washington D.C. addressed to "Colleague" the letter discussed the "great value" of Defendants' guaranteed renewable LTC policy and encouraged the timely payment of premiums when due and attached a billing statement for the semi-annual premium. *See* Exhibit C.

Had Defendants not made these misrepresentations and omitted material facts about the policies in uniform promotional sales and marketing documents and form letters, Plaintiff and the class would not have purchased and renewed these group LTC policies.

Alvarez received notice of an 80 percent increase for his group LTC insurance annual premium in a September 16, 2004 letter from George F. Palladino, Chair of ACS Insurance Plans on ACS letterhead with the District of Columbia address for ACS headquarters. This letter also stated that the Board of Trustees, Group Insurance Plans for ACS Members had no legal authority to change the rate increase. The ACS letter advised of a second increase of similar magnitude within the next 24 months. *See* Exhibit D. Subsequently, an October 2004 unsigned letter was sent by "CIGNA Group Insurance" with no return address to "Insured" enclosing the premium notice for November 1, 2004 and stating that CIGNA was "sorry" to increase its LTC rates by 80 percent as a "result of emerging experience on this program." The premium notice increased Alvarez's annual premium from $1,888.00 to $2,138.00. This letter, without any information as to the address for "CIGNA Group Insurance" contained material representations and omissions regarding the group LTC policies purchased by Alvarez and other members of the class.

**ARGUMENT**

Section 1404(a) of 28 U.S.C. authorizes a district court to transfer a civil action to any other district where it could have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." Discretion in vested in the district court "to adjudicate a motion to transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc .v. Ricoh Corp.*, 487 U.S. 22, 27, 108 S.Ct. 805, 11 L.Ed. 2d 945 (1964) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)). The defendant bears the heavy burden of establishing that the plaintiff's choice of forum is inappropriate. *Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr.*, 24 F. Supp.2d 66, 71 (D.D.C. 1998); *Trout Unlimited v. Dept. of Agriculture*, 944 F.

Supp. 13, 16 (D.D.C. 1996). *See also Pain v. United Tech. Corp.,* 637 F.2d 775, 784 (D.C. Cir. 1980); *Securities and Exchange Comm. v. Savoy Ind., Inc.,* 587 F.2d 1149, 1154 (D.C. Cir. 1978); *Flynn v. Veazey Construction Corp.*, 310 F.Supp. 2d 186, 193 (D.D.C. 2004).

Courts consider several factors in determining whether to transfer a case under section 1404(a) including a balancing of the private interest of the parties and the public interests of the courts. The private interest factors include (1) the plaintiff's choice of forum, unless the balance is strongly in favor of defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial; and (6) the ease of access to sources of proof. *Shapiro,* 24 F. Supp. 2d at 71. *See also Montanans for Multiple Use v. Cathy Barbouletos,* Civil Action No. 03-1244, (D.D.C, 2004); *Thayer/Patricof Education Holdings v. Pryor Resources,* 196 F. Supp. 2d 21, 31 (D.D.C. 2002); *Trout Unlimited,* 944 F.Supp. at 16 (D.D.C. 1996); *Beals v. SICPA Securink Corp.,* 1994 U.S. Dist. LEXIS 7104 (D.D.C. 1994). The balance of these factors should be viewed with a presumption **against disturbing the plaintiff's choice of forum**. *Id* (emphasis added).

Public interest considerations include (1) the transferee court's familiarity with the governing law; (2) the relative congestion of the calendars of the transferee and transferor courts; and (3) the local interest in deciding the controversy or litigation. *Shapiro*, 24 F. Supp. 2d at 73.

I.    **PRIVATE INTEREST FACTORS**

Defendants have not met their burden of establishing that the case specific private interest factors discussed below favor transfer of this case to federal court in Philadelphia, Pennsylvania where Defendants headquarters are located.

A.    **Plaintiff's Choice of Forum**

The Plaintiff's choice of forum is due **substantial deference** where the allegations of the case have a "significant connection to the forum." *Shapiro*, 24 F. Supp.2d at 719 (emphasis added). When the plaintiff is not a resident of the District of Columbia, the plaintiff's "choice of forum is still given some weight." *Beals, supra*. Although Alvarez is not a resident of the District of Columbia, D.C. still retains a significant connection to the litigation. Plaintiff was a member of ACS, headquartered in the District of Columbia and resided in Gaithersburg, Maryland in 1992, when he purchased a group LTC policy underwritten by Defendants through ACS. This group LTC Policy was issued and delivered in the District of Columbia. Plaintiff's INA Insurance policy states that the policy was being issued by Defendant INA to the Trustee of the National Groups Benefits Insurance Trust for ACS. The Master Policy for the group LTC states that it was delivered in the District of Columbia. Defendant CIGNA's Group Insurance Division's Peter Brown admitted in a January 3, 2005 letter to the Maryland Insurance Administration that the District of Columbia not Maryland is the situs of the CIGNA Group LTC policy sold to Alvarez. *See* Exhibit E . After receipt of the CIGNA letter, the Maryland Insurance Administration wrote to Alvarez on January 11, 2005 that the insurance coverage laws of the District of Columbia would apply to his insurance policy. *See* Exhibit F.

The misrepresentation, fraud and bad faith at the heart of Plaintiff's Complaint occurred as a result of the misrepresentations and omissions in the uniform marketing and sales documents and form letters sent by Defendants through ACS in the District of Columbia. Most directly at issue in this case are the misrepresentations made by Defendants, not the decision-making process that Defendants contend occurred in Philadelphia. Defendants chose to do business in the District of Columbia when Defendants signed agreements with ACS to sell group LTC insurance through ACS in the District of Columbia. Entering into this agreement and selling group LTC through ACS establishes that there is a significant connection to the Plaintiff's choice of forum in the District of

Columbia. *See, e.g. Thayer,* 196 F.Supp.2d at 35 (entry into agreement and accompanying representations by defendants constitute a significant contact with forum).

B.   **Defendants' Choice of Forum**

Defendants have moved to transfer this case to the Eastern District of Pennsylvania in Philadelphia where their corporate headquarters are located. This civil action is based upon diversity of citizenship and may be brought in any judicial district where a "substantial part of the events or omissions giving rise to the claim occurred." 18 U.S.C. § 1391(a)(2). "[I]t is not necessary 'to identify the district having the *most* significant connection to the claim at issue' since venue may be proper in more than one district. "*Weinberger v. Tucker,* Civil Action No. 04-1130 (D.D.C 2005)(quoting *Production Group Intern. v. Goldman,* 337 F. Supp.2d 788. 798 (E.D.Va. 2004), citing *Mitrano v. Hawes,* 377 F.3d 402, 405 (4th Cir. 2004)).

Plaintiff contends that the misrepresentations made in uniform sales and marketing documents and form letters sent from ACS to Alvarez and other members of the class from the District of Columbia are most directly at issue in this case, not the decisions made by Defendants' officers and employees in Philadelphia as alleged in Defendants' Motion to Transfer.

C.   **Whether the Claims Arose in the District of Columbia**

The Complaint alleges that Defendants knew about the defects in the ACS Group Insurance policy when LTC group insurance was sold to ACS members. Material information and misrepresentations about the policies were communicated to Alvarez and other policyholders through uniform promotional sales and marketing documents and form letters distributed by Defendants through ACS in the District of Columbia. Similarly, in 2003 form annual and semi-annual letters were sent to Alvarez and other group LTC policyholders encouraging the renewal of Defendants' group LTC policies because they provided valuable guaranteed renewable LTC coverage. Again, material information about the problems with the group LTC policies with planned

premium increase was omitted in these form renewal letters sent through ACS in the District of Columbia. Without question, Plaintiffs' claims for misrepresentation, fraud, bad faith and violations of fair trade practices arose in the District of Columbia. There is a substantial factual nexus to this forum.

Defendants claim that that the alleged misrepresentation and fraud occurred in Philadelphia where decisions were made regarding the underpricing of the group LTC insurance and the 80 percent premium increase after the 2003 study by outside actuaries. The private interest factor of where the claims arose does not "tip the scales in either direction" to deny or grant the motion to transfer. See *Montanans for Multiple Use, supra.*

### D.     Convenience of the Parties

Defendants have not demonstrated any particular hardship to themselves in litigating this action in the District of Columbia. *See Montanans for Multiple Use, supra.* Transferring this action to the Eastern District of Pennsylvania to "increase significantly" the convenience of the Defendants because their witnesses and documents are located in Philadelphia at their corporate headquarters is not a sufficient reason to transfer this case.

### E.     Convenience of the Witnesses

Defendants have not shown that a transfer of venue to Philadelphia would be more convenient for non-party witnesses or that any of defendants' witnesses would be unwilling to appear at a trial in the District of Columbia. The relevant considerations concerning the convenience of the witnesses includes the number of non-party witnesses, their locations and the preference of the court for live testimony over video-taped depositions. *Thayer,* 196 F.Supp.2d at 23. Defendants have admitted that outside actuaries were used in the pricing review of the LTC policies in 2003, but did not identify these witnesses, their location or availability for trial. Defendants have not provided any specific information about any witnesses or key testimony other than providing a general statement

that the witnesses and documents are located in Philadelphia. A party moving to transfer "must demonstrate (through affidavits or otherwise) what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether the witness is willing to travel to a foreign jurisdiction." *Thayer,* 196 F.Supp.2d at 33-35. *See also Mohamed v. Mazada Motor Corp.,* 90 F.Supp. 2d 757 (E.D. Tex. 2000) (denying transfer when, among other factors, defendant failed to identify witnesses outside the forum state); *Trout Unlimited,* 944 F. Supp. at 16 (court considers convenience of witnesses "only to the extent that the witnesses may actually be unavailable for trial...").

### F. **Ease of access to sources of proof**

The location of documents in another forum does not warrant transfer and is of less importance given modern technology. *Thayer,* 196 F.Supp.2d at 36(citing *Airline Pilots Ass'n. v. Eastern Airlines,* 672 F. Supp. 525, 527 (D.D.C. 1987) ("No matter where the litigation proceeds, these materials will have to be photocopies and shipped..."); *Coker v. Bank of America,* 984 F. Supp. 757, 766 (S.D.N.Y. 1997) ("The location of documents factor is neutral" because "in today's era of photocopying, fax machines and Federal Express, [the] documents could easily be sent to New York"); *Continental Airlines v. American Airlines,* 805 F. Supp. 1392, 1397 (S.D.Tex. 1992) ("documents can be produced and examined anywhere for discovery purposes")). Defendants claim that "the overwhelming majority of the relevant documents and witnesses" are located in Philadelphia is a vague statement that does not comply with proving difficulty with access to proof in the District of Columbia.

### II. Public Interest Factors

An analysis of the following public interest factors further confirms that this Court should deny Defendants' motion to transfer venue to the Eastern District of Pennsylvania.

### A.  <u>Familiarity with the governing law</u>

In order to weigh this factor, the court must first determine which law is applicable to Plaintiffs' claims. *Brown v. Dorsey & Whitney, LLP.*, 267 F.Supp.2d 61 (D.D.C.,2003)( "The absence of a true conflict compels the application of District of Columbia law by default")(citing *Greaves v. State Farm Ins. Co.*, 984 F.Supp. 12, 15 (D.D.C.1997)). Defendants assert that Maryland law is applicable to Plaintiffs' claims. On the contrary, an extensive choice of law analysis shows that District of Columbia law is applicable. The choice of law issue is comprehensively briefed in Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant, the Insurance Company of North America's Motion to Dismiss, which Plaintiffs fully incorporate by reference for the purposes of this brief.

This cases involves allegations of (1) actual fraud, (2) constructive fraud, (3) unlawful trade practices, (4) breach of implied covenant of good faith and fair dealing, and (5) a request for punitive damages. District of Columbia law is the appropriate law to apply to Plaintiffs' case because (1) D.C. has a substantial interest in application of its laws to Alvarez's claim because the insurance policy was issued and delivered in D.C.; (2) there is no substantial conflict between D.C., Maryland, and Pennsylvania laws on actual and constructive fraud; (3) D.C. has a greater interest in applying its consumer fraud statute and (4) D.C. has a greater interest in applying its laws on tortious breach of implied covenant of good faith and fair dealing.

In essence, although federal courts are often called upon to apply the laws of other jurisdictions, this Court has more familiarity with the laws of the District of Columbia rather than a District Court in the Eastern District of Pennsylvania. *See Amoco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 324 (D.D.C. 1991). Federal courts are required to apply the choice of law principles of the forum jurisdiction. *See Lee v. Flintkote Co.*, 593 F.2d 1275 (D.D.C. 1979). Under District of Columbia law, the substantive law of the state where the insurance policy is delivered will govern.

*Cambridge Holdings Groups, Inc., v. Federal Ins. Co.*, 357 F. Supp.2d 89 (D.D.C. 2004). In this case, the documentary evidence confirms that the group LTC policy was delivered in the District of Columbia. *See District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995). Accordingly, Maryland law is not applicable to the Plaintiff's claims in the Complaint.

A "governmental interest" analysis of the laws of Pennsylvania, Maryland and District of Columbia also leads to the conclusion that the policies of the District of Columbia would be more advanced by the application of its laws to LTC policies issued and delivered in the District to groups headquartered in the District. The public interest is "best served by having a case decided by the federal court in the state whose laws govern the interests at stake." *Trout Unlimited*, 944 F. Supp. at 19.

### B.   Congestion of District Court in E.D .PA

Transfer to the Eastern District of Pennsylvania may delay the litigation for this 85 year old Plaintiff and other elderly members of the class because more civil cases are filed in the Eastern District of Pennsylvania than the District of Columbia. There were 1,827 civil cases pending in the District of Columbia on March 31, 2005 and 10,665 civil cases pending in the Eastern District of Pennsylvania. See Table C-3 at the web site for the United States Courts *available at* http://www.uscourts.gov/caseload2005/tables/C03mar05.pdf. *See* Exhibit G. This is evidence of the congestion of the civil docket for the Eastern District of Pennsylvania when compared to the civil docket for the District of Columbia. Citing cases with language that "there is no reason to believe that the docket of another court is more congested" does not satisfy the information required to analyze this public interest factor. When no information is provided regarding congestion of one district versus another this factor cannot weigh in Defendants' favor. *Shapiro*, 24 F. Supp. 2d at 73.

C.   <u>**Local interest**</u>

The District of Columbia has a strong interest in insuring that out of state insurance companies are held responsible for their misrepresentations and fraud when they choose to do business through organizations headquartered in the District of Columbia. Defendant CIGNA, one of the largest insurance companies and its subsidiary INA, which has now changed its name to LINA, chose to offer a group LTC policy for sale through ACS, an organization headquartered in the District of Columbia.

This group LTC insurance policy was issued and delivered in the District of Columbia not Maryland. The State of Maryland Insurance Administration and CIGNA have recognized in correspondence with each other that the ACS Group LTC policy is "sitused" in the District of Columbia. Obviously, the interest of the District of Columbia is greater than the Eastern District of Pennsylvania, especially when there is no evidence that the ACS group LTC "Independence Plan" policy sold to Alvarez was sold in Pennsylvania. *See Shapiro*, 24 F.Supp.2d at 73 (District of Columbia had a stronger interest in the litigation because defendants initiated the events resulting from the pending claims in the District of Columbia.). *See also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509-509 (1947).

## CONCLUSION

For the reasons stated above, this court should deny Defendants' Motion to Transfer Venue to the Eastern District of Pennsylvania. Defendants have not met their burden of showing that the interest of justice and a balancing of the private and public factors make Philadelphia the more appropriate forum.

Dated: May 3, 2006

Respectfully submitted,

*[signature]*

JAMES & HOFFMAN
EDGAR N. JAMES
(DC Bar No. 333013)
AMY FETTIG
(DC Bar No. 484883
1101 Seventeenth St. N.W., Suite 510
(202) 496-0500

KANNER & WHITELEY
ALLAN KANNER (LA #20580)
CONLEE S. WHITELEY (LA #22678)
AYLIN R. AÇIKALIN MAKLANSKY
(LA #30195)
701 Camp Street
New Orleans, LA 70130

VOGEL LAW FIRM
TIMOTHY Q. PURDON (ND#05392)
MONTE L. ROGNEBY (ND#0529)
P.O. Box 2097
(701) 258-7899

PERRY PEARCE BENTON
(Bar No. ASB-2159-N66P)
32330 Sandpiper Dr.
Orange Beach, AL 36561
(251) 980-2630

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of May 2006, a copy of the foregoing was forwarded via first-class mail, postage prepaid to:

James F. Jorden
Raul A. Cuervo
Stephen H. Goldberg
Jorden Burt LLP
1025 Thomas Jefferson Street, N.W.
Suite 400 East
Washington D.C. 20007-5208

James & Hoffman
Edward N. James
Amy Fettig
1101 Seventeenth St. N.W. Suite 510
Washington D.C. 20036