UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Robert Alvarez )<br>1419 Southeast 43rd Terrace )<br>Ocala, FL 34471, )<br>individually, and on behalf of all others )<br>similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CIGNA Corporation d/b/a )<br>CIGNA Group Insurance and )<br>The Insurance Company of North America, )<br>)<br>Defendants. ) | Civil Action No. 1:06CV00145<br><br><br>THE HONORABLE<br>EMMET G. SULLIVAN |

Robert Alvarez
1419 Southeast 43rd Terrace
Ocala, FL 34471,
individually, and on behalf of all others
similarly situated,

　　　　　　Plaintiff,

　　v.

CIGNA Corporation d/b/a
CIGNA Group Insurance and
The Insurance Company of North America,

　　　　　　Defendants.

Civil Action No. 1:06CV00145

THE HONORABLE
EMMET G. SULLIVAN

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE

Defendants, CIGNA Corporation[1] and Insurance Company of North America ("INA") (collectively, the "Defendants") file this Reply Memorandum in Support of Defendants' Motion to Transfer Venue to the Eastern District of Pennsylvania Pursuant to 28 U.S.C. § 1404(a) (the "Transfer Motion"). For the reasons stated herein and in the Transfer Motion, the Court should transfer this case to the Eastern District of Pennsylvania.

## I.　　PLAINTIFF'S "FACTS" SUPPORT TRANSFER.

Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Transfer (the "Transfer Opposition") cannot alter the salient facts in this case, all of which

---

[1]　　Plaintiff's First Amended Class Action Complaint (the "Amended Complaint") styles this action to include as a defendant "CIGNA Corporation d/b/a CIGNA Group Insurance." Defendant CIGNA Corporation, a Pennsylvania corporation, does not do business as "CIGNA Group Insurance," and any reference herein to "d/b/a CIGNA Group Insurance" shall not be deemed an admission of the accuracy of such reference. In addition, CIGNA Corporation is not an insurance company and does not issue or provide coverage under policies of insurance.

compel transfer. Plaintiff is currently a Florida resident. At issue in this case is an increase implemented in 2004 to the premium charged on certain long term care insurance coverage (the "LTC Coverage") that Plaintiff purchased in 1992 from INA, a Pennsylvania insurance company. Plaintiff resided in Maryland when he purchased the LTC Coverage and when the 2004 premium increase of which he complains was implemented. The original pricing for the LTC Coverage (first sold in 1988) and the 2004 premium increase (which represents the first, and only, such increase) were effected from Pennsylvania based upon business decisions made in Pennsylvania. Thus, there exists no material connection between the allegations in the Amended Complaint and the District of Columbia (the "District").

Plaintiff's Transfer Opposition serves to highlight that this action should be litigated in Pennsylvania. By Plaintiff's own admission, the only thread that connects this case to the District is that he is a certificateholder under a Master Policy issued to the National Group Benefits Insurance Trust (the "Trust") in the District. As explained herein, however, the situs of the Master Policy is irrelevant to this controversy, which, notably, involves no *contract-based* claims.[2] Indeed, had the Master Policy been sitused in *any* other jurisdiction, Plaintiff would still be pursuing this same *fraud-based* case.

Plaintiff attempts to manufacture additional connections with the District by submitting with his Transfer Opposition certain communications he received (in Maryland) from the American Chemical Society ("ACS").[3] However, neither the Trust nor ACS is a party to this

---

[2]    The Amended Complaint makes no contract claims. Plaintiff alleges that Defendants, both Pennsylvania companies, fraudulently misrepresented certain facts about the pricing of the LTC coverage. Thus, all of the claims sound in tort and involve conduct that was engaged in, and allegedly damaged Plaintiff, outside the District.

[3]    Plaintiff was a member of ACS, a professional association headquartered in the District, when he purchased his LTC Coverage. Plaintiff was eligible to purchase his LTC Coverage by virtue of his membership in ACS.

action.[4]  Consequently, neither the situs of the Master Policy nor the ACS communications present any relevant connection to the District with respect to the claims Plaintiff asserts against Defendants, all of which are based on allegations of fraudulent misrepresentations made by Defendants with respect to the pricing of Plaintiff's LTC Coverage.

## II.    PLAINTIFF'S CHOICE OF FORUM SHOULD BE GIVEN NO WEIGHT.

### A.    Plaintiff's Choice of Forum Should Be Given No Weight Because He Is Not a Resident of the Forum and All Allegations Concern Conduct Outside the Forum.

As Plaintiff is forced to admit, when a plaintiff is not a resident of the District of Columbia, his choice of forum is only given "some weight." (Transfer Opposition at 7, citing *Beals v. SICPA Securink Corp.*, 1994 U.S. Dist. LEXIS 7104 (D.D.C. 1994).)  Plaintiff's choice of forum receives "*substantially less* deference where the plaintiff[], as here, neither reside[s] in, nor [has] any *substantial connection to*, that forum." *DeLoach v. Philip Morris Cos., Inc.*, 132 F. Supp. 2d 22, 24 (D.D.C. 2000) (emphasis added).  Plaintiff is not, and has never been at any material time, a resident of the District.  Furthermore, the Amended Complaint is based upon allegations of fraudulent misrepresentations regarding the pricing of the LTC Coverage, which were directed from Pennsylvania. (*See* Affidavit of Maria DaSilva-Neto filed in support of Transfer Motion and attached thereto as Exhibit A ("First DaSilva-Neto Aff.") at ¶¶ 5-7.)  The alleged misrepresentations were received and relied upon by Plaintiff in Maryland.  In short, no relevant connection between the District and Plaintiff, or his claims, is present.

Plaintiff's reliance on the situs of the Master Policy and his newfound focus on materials he received from ACS while he was a Maryland resident cannot create the required "substantial

---

[4]    That Plaintiff has not sued the Trust or ACS is not unusual given that none of the claims in the Amended Complaint are directed at the group policy itself.  As discussed herein, all of Plaintiff's claims are tort claims directed against alleged fraudulent representations and omissions by the insurer, INA.  Thus, the very nature of Plaintiff's claims renders any connection to the District even more remote.

connection" to his chosen forum. *See DeLoach,* 132 F. Supp. 2d at 24. In *DeLoach,* plaintiffs argued that because the defendants were allegedly violating the regulatory scheme of an agency headquartered in the District (the USDA), a sufficient connection to the District was present to overcome a motion to transfer. *Id.* at 25. The *DeLoach* court found that the plaintiffs were unable to show how the USDA or any of its employees had a significant day-to-day role in observing or managing the alleged conduct. *Id.* Similarly, in the instant case, the situs of the Master Policy and Plaintiff's membership in ACS have no connection to the pricing of the LTC Coverage or the alleged fraudulent misrepresentations made by Defendants relating to the LTC Coverage.

The absence of a relationship between Plaintiff and the District, and the nature of his claims, preclude the "substantial connection" with the District that would call for any deference to his choice of forum.

**B.    The Putative Class Action Further Diminishes the Significance of Plaintiff's Choice of Forum.**

Plaintiff, who is not a resident of the District and has no substantial connection to the District, brings this putative class action in a representative capacity. Thus, he presumptively seeks relief for thousands of others "similarly situated." As this District Court has previously held, the weight normally given to a plaintiff's choice of forum, which in this case is already diminished by the lack of substantial connection to the District, is diminished even further when plaintiff acts in a representative capacity in a class action. *Deimer v. U.S.P.S.,* Civ. A. No. 86-0647, 1987 WL 9037, at *3 (D.D.C. Mar. 19, 1987) ("However, the fact that plaintiffs' cause of action may involve a broad class of persons merely diminishes the significance of plaintiffs' choice of forum.") (citing *Sommerville v. Major Exploration, Inc.,* 567 F. Supp. 902, 908 (S.D.N.Y. 1983)).

Plaintiff purports to bring his claims on behalf of all purchasers of the LTC insurance coverage from 1988 to the present whose premiums have been increased. (Amended Complaint at ¶ 58.) He asserts that the putative class comprises between 3,000 and 5,000 individuals. (*Id.* at ¶ 59.) The premium increase implemented in 2004 affected few individuals who purchased their coverage in the District. (Affidavit of Maria DaSilva-Neto, attached hereto as Exhibit A ("Second DaSilva-Neto Aff.") at ¶ 4.) Significantly more putative class members – approximately six times as many – purchased their coverage in Pennsylvania. (*Id.*) "[S]ince only a miniscule number of putative class members resides in the transferor forum, Plaintiff['s] choice [of forum] in this case is accorded little, *if any*, deference." *DeLoach*, 132 F. Supp. 2d at 25 (emphasis added).

## III.    BALANCING RELATIVE CONVENIENCE WEIGHS SUBSTANTIALLY IN FAVOR OF TRANSFER.

A reasonable balancing of the convenience factors relevant to a court's analysis of a section 1404(a) motion weighs in favor of transferring this case to the Eastern District of Pennsylvania. Any employees of Defendants with relevant knowledge are not in the District of Columbia. (*See* First DaSilva-Neto Aff. at ¶ 9.)[5] Further, it is undisputed that these potential witnesses reside primarily in the Philadelphia, Pennsylvania, area. (*Id.*) On the other hand, the Plaintiff is a Florida resident, and whether this action is litigated in this Court or in the Eastern District of Pennsylvania results in no greater inconvenience to him. It is also undisputed that Defendants' documents (if any) relating to the pricing or marketing of Plaintiff's LTC Coverage are located in Philadelphia. (*See id.* at ¶ 8.)

---

[5]    Plaintiff argues that Defendants must be specific with regard to what witnesses it intends to call and why those witnesses would not be available in the District. However, where it is clear that witnesses who may be called are outside of the forum, it is not necessary to require that specificity. *See Ahlstrom v. Clarent Corp.*, No. Civ. 02-780RHKSRN, 2002 WL 31856386, at *8, 9 n.12 (D. Minn. Dec. 19, 2002) (responding to plaintiffs' objection that defendants did not provide names of witnesses and a statement of their testimony, court found that "[a]s this Court has long ago observed, . . . 'this is not a requirement *sine qua non*'").

Plaintiff has not countered any of these points with his own affidavits. Instead, he can only cite to cases that are inapposite to the instant circumstances. For example, *Thayer/Patricof Education Funding, L.L.C. v. Pryor Resources, Inc.*, 196 F. Supp. 2d 21, 35 (D.D.C. 2002), involved an agreement to purchase a company executed in the District, and all of the plaintiffs' claims revolved around negotiations and representations made to the plaintiffs in the District. Moreover, the plaintiffs were residents of the District. *Id.* at 28. The court accordingly found that the events at issue had a "significant connection with [the District]," and that the defendants bore a "heavy burden" to overturn the plaintiffs' choice of forum. *Id.* at 35. In addition, the court noted that the presumption in favor of a plaintiff's choice of forum was even stronger in cases arising under the federal securities laws. *Id.* n.9.

The facts before this Court are diametrically opposed to those in *Thayer* and produce no such burden or presumption. Indeed, if anything, *Thayer* supports Defendants' Transfer Motion because the alleged fraudulent misrepresentations here were made to and relied upon by Plaintiff while he was a resident of Maryland.

## IV.  THE RELEVANT PUBLIC INTEREST FACTORS WEIGH SUBSTANTIALLY IN FAVOR OF TRANSFER.

### A.  Familiarity with Governing Law Supports Transfer Because the Laws of the District Will Not Apply to Plaintiff's Claims.

Plaintiff maintains that "an extensive choice of law analysis shows that District of Columbia law is applicable" to his claims. (Transfer Opposition at 11.) His "extensive analysis," however, applies inapposite law and irrelevant facts in a tortured attempt to reach a wholly unsupportable result. In any event, for the purposes of the present motion, an extensive choice of law analysis for each of Plaintiff's claims is not required to conclude that the laws of

the District have no application.[6]  The basic principles underlying the District's choice of law rules demonstrate overwhelmingly that the District has no significant relationship to this controversy and, therefore, no interest in having its laws applied hereto.

### 1.     The District does not have the significant relationship with this controversy that the choice of law rules require.

Plaintiff bases his case on allegations that Defendants, from their respective principal places of business in Pennsylvania, engaged in fraudulent misrepresentations that Plaintiff received and relied on in Maryland, and that caused economic damage to him while, at all relevant times, he was a resident of Maryland.  Ignoring the material and substantial contacts with Maryland and Pennsylvania that underlie his allegations, Plaintiff asserts that the District's laws should apply simply because the Master Policy is sitused in the District.  Under the applicable choice of law principles, however, the situs of the Master Policy is irrelevant to this controversy, which involves no contract-based claims.

The District's choice of law principles call for an interest analysis that determines the jurisdiction with the "most significant relationship" to the issue in dispute.  *See, e.g., Minebea Co., Ltd. v. Papst*, 377 F. Supp. 2d 34, 37 (D.D.C. 2005).  For each claim, "[t]he relevant inquiry focuses on the relationships of the . . . jurisdictions to the controversy, the interests involved, and whether application of foreign law would offend a strong and clearly defined local policy." *Mazza v. Mazza*, 475 F.2d 385, 391 (D.C. Cir. 1973).  "First, the Court must determine which States have an interest in the controversy at hand.  Second, the Court must decide, *from those found to have a conflicting interest*, which State's policy would be advanced by application of its law." *Keene Corp. v. Ins. Co. of N. Am.*, 597 F. Supp. 934, 938 (D.D.C. 1984) (citing *Gaither v.*

---

[6]     An extensive choice of law analysis for each of Plaintiff's claims is appropriately left for consideration in connection with Defendants' pending motion to dismiss, and Defendants will further explain the pervasive and fundamental flaws in Plaintiff's "analysis" in their reply memorandum in support of that motion.

*Myers*, 404 F.2d 216, 222 (D.C. Cir. 1968)) (emphasis added).  The Court will "examine not the general interests of various states, but the precise interests in the specific issue involved." *Id.*

It is evident from these general principles that the laws of the District will not apply to this controversy.  Pennsylvania and Maryland have the only relevant contacts to Plaintiff's claims: all of the alleged misconduct on the part of Defendants was engaged in from Pennsylvania; Plaintiff resided in Maryland; he received and acted in reliance on the alleged fraudulent misrepresentations in Maryland; he paid his premiums from Maryland; and he incurred his alleged damages there.  In contrast, Plaintiff can establish no *relevant* relationship between the District and his claims, being able to point only to the situs of the Master Policy and the headquarters of ACS.

As explained in authority Plaintiff himself cites: "'[w]hen the policy of one state would be advanced by application of its law, and that of another state would not be advanced by application of its law, *a false conflict appears and the law of the interested state prevails.*'" *In re Estate of Delaney*, 819 A.2d 968, 988 (D.C. 2003) (citation omitted) (emphasis added).  The instant case presents a classic "false conflict" because the District has no material relationship to this controversy.  Consequently, no interest of the District is implicated, and the failure to apply the laws of the District cannot offend any "strong and clearly defined local policy" of the District.  *See Mazza*, 475 F.2d at 391.  The "false conflict" arising from the absence of any significant relationship between the District and Plaintiff's claims renders the District's laws inapplicable and obviates the need to consider any policies underlying the District's substantive law.  *See, e.g., id.; Delaney*, 819 A.2d at 988-90.

2.      **The laws of the District will not apply.**

That the laws of the District have no applicability to this controversy is demonstrated by the specific choice of law analysis for Plaintiff's fraud claims.  This District Court, and other courts applying the applicable interest analysis, have made it clear that the District has no significant interest in applying its laws to claims of fraud where, as here: (1) the alleged victim of the fraud resided outside the District, received the fraudulent communications outside the District, acted in reliance on such communications outside the District, and incurred damages outside the District, and (2) the alleged perpetrator of the fraud resided and acted from outside the District.

For example, in *Keene* this District Court addressed choice of law issues with respect to a claim of fraudulent misrepresentation brought by an insured against an insurer.  *Keene*, 597 F. Supp. at 936, 944-5.  The court "look[ed] to the interests important to the particular issue to be decided" by applying Section 148 of the Restatement (Second) of Conflict of Laws, which "sets forth the contacts relevant to claims of fraudulent misrepresentation" –

    (a)   the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

    (b)   the place where the plaintiff received the misrepresentations,

    (c)   the place where the defendant made the representations,

    (d)   the domicile, residence, nationality, place of incorporation and place of business of the parties,

    (e)   the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

    (f)   the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Id.* at 944 (citing Restatement (Second) of Conflict of Laws § 148(2) (1971)).

Considering these relevant contacts, the *Keene* court held that the laws of New York, and *not* of the District, governed the fraudulent misrepresentation claim because the plaintiff

corporation had its principal place of business in New York, presumably relied on the insurer's alleged misrepresentation in New York, and presumably received the alleged misrepresentation in New York. *Id.* at 944-5. The plaintiff had argued that the laws of the District should apply because the plaintiff filed its lawsuit there, the claims against the plaintiff for which it sought coverage from the insurer were brought there, and both parties were doing business there. *Id.* The court rejected plaintiff's argument, emphasizing that the District had no interest in the dispute because those contacts were "irrelevant to the issue of misrepresentation." *Id.* at 944.

The governing choice of law principles similarly lead to the conclusion that the District's laws will not apply in the instant case because the District has no relevant contacts with Plaintiff's claims.    Plaintiff was a Maryland resident when the alleged fraudulent misrepresentations were made.[7] Like the plaintiff in *Keene*, he received and acted in reliance on the alleged fraudulent misrepresentations outside the District, in this case, Maryland. Furthermore, the other relevant contacts similarly point *away from* the District: Defendants engaged in the alleged misconduct in Pennsylvania, and Plaintiff rendered his performance in Maryland, from where he paid the premiums to INA in Pennsylvania. In contrast, the only "contact" in this case to the District – the situs of the Master Policy – is irrelevant to the choice of law analysis applicable to Plaintiff's fraud claims.[8]

---

[7]    "This contact is 'of substantial significance' to the misrepresentation issue, especially 'when the loss is pecuniary . . . because a financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship.'" *Keene*, 597 F. Supp. at 944 (citation omitted). There can be no dispute that Maryland has a much closer relationship to Plaintiff than the District.

[8]    Plaintiff argues that the laws of the District should apply to his fraud claims by simply citing to a statement in *Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61 (D.D.C. 2003), that "[t]he absence of a true conflict compels the application of District of Columbia law by default." (Transfer Opposition at 11.) Even a cursory reading of *Brown*, however, reveals that the court therein was applying the choice of law analysis for "cases involving contract disputes," and looked to an entirely inapposite section of the Restatement (Second) of Conflicts of Laws – section 188, which deals with choice of law with respect to issues *in contract* when the parties have not made an effective choice of law. *See Brown*, 267 F. Supp. 2d at 71; Restatement (Second) of Conflicts of Laws § 188. The case at bar sounds in tort, not contract. Moreover, the law is clear that the absence of a conflict leads to the application of the laws of the jurisdiction having the most significant interest in the controversy in order to

Application of the District's choice of law principles, which look to the relevant contacts

set forth in Section 148 of the Restatement, demonstrate convincingly that the laws of the

District will not apply to Plaintiff's fraud claims. *See, e.g., Keene*, 597 F. Supp. 934; *Hercules &*

*Co., Ltd. v. Shama Rest. Corp.*, 566 A.2d 31 (D.C. 1989) (applying law of jurisdiction where

plaintiff resided, received alleged fraudulent misrepresentations, and acted in reliance thereon).

The choice of law analysis applicable to Plaintiff's other claims similarly turns on the numerous,

relevant contacts with Maryland and Pennsylvania, and the dearth of relevant contacts with the

District, and leads to the same conclusion: the laws of the District will not apply.[9]

**B.    Speedier Disposition of This Case Supports Transfer.**

Plaintiff misses the mark in his Transfer Opposition when he argues that the Eastern

District of Pennsylvania's courts are more congested. He provides incorrect data and fails to

include the source of that data.[10]    He also manipulates the data he has submitted to present a

---

further the interested jurisdiction's policies. As explained in Defendants' motion to dismiss, that jurisdiction is Maryland. In any event, for the purposes of the present motion, the relevant point is that *the District's laws will not apply* because it has no relevant connection with this controversy.

[9]    Under the District's choice of law analysis, for Plaintiff's claim of tortious breach of the implied duty of good faith and fair dealing, the Court will look to Section 145 of the Restatement (Second) of Conflict of Laws, which identifies the following relevant contacts: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *See, e.g., Nelson v. Nationwide Mortgage Corp.*, 659 F. Supp. 611, 616 (D.D.C. 1987) (applying section 148 of Restatement (Second) of Conflict of Laws to fraud claim, and applying section 145 to negligence claim). The law applicable to Plaintiff's claim for punitive damages will turn on consideration of these same contacts. *See* Restatement (Second) of Conflict of Laws § 171 ("The law selected by application of the rule of § 145 determines the measure of damages."). Plaintiff's claim under the District of Columbia Consumer Procedures and Protection Act ("CPPA") does not implicate choice of law issues because the CPPA simply has no applicability inasmuch as it does not reach the conduct alleged by Plaintiff. *See Nelson*, 659 F. Supp. at 616 ("[T]he Court need not engage in a conflicts analysis here because it finds that even if Nelson's factual allegations are taken as true, the District of Columbia statute does not reach the conduct involved in this case."). Furthermore, Plaintiff essentially asserts that the District's law should apply because it is more favorable to his claim in that it allegedly applies to insurers. As explained herein, however, choice of law does not turn on which jurisdiction's laws are more favorable to Plaintiff, but on the relevant contacts and the resultant determination of the jurisdiction having the most significant relationship to the controversy.

[10]    In presenting data purportedly showing the relative congestion in the relevant courts, Plaintiff claims to have relied upon Table C-3 at the web site for the United States Courts, *available at http://www.uscourts.gov/caseload2005/tables/C03mar05.pdf.* Table C-3, however, does not provide data on *pending* cases, but rather the number and type of cases *commenced.* Data regarding pending cases by district court

misleading picture.[11]  His major error, however, is focusing solely on caseloads while ignoring the more significant data regarding time from inception of a case to its ultimate conclusion.

In deciding a motion to transfer, courts look not only to the relative congestion of the transferor and transferee courts, but also to "other practical aspects of expeditiously and conveniently conducting a trial." *DeLoach*, 132 F. Supp. 2d at 25.  In this regard, Plaintiff argues that a delay in the adjudication of this matter would be undesirable given his age and the age of putative class members. (Transfer Opposition at 12.)  The relevant data, however, reveal that a transfer to the Eastern District of Pennsylvania will likely *increase* the speed at which this matter is litigated.

According to the Judicial Caseload Profile Reports, the average amount of time from filing to disposition of civil cases in the Eastern District of Pennsylvania is 1 month; the average time from filing to trial is 20.8 months. *See* Caseload Reports.  In the District of Columbia, the average time from filing to disposition in civil cases is 10.8 months; the average time from filing to trial is 35 months. *See id.*  Thus, on average, in the District of Columbia civil cases take nine months longer to reach final disposition, and 14 months longer to reach trial, than in the Eastern

---

appears in Table C-1, *available at http://www.uscourts.gov/caseload2005/tables/C01mar05.pdf*, which Plaintiff failed to include with his Transfer Opposition.  Table C-1 is attached hereto as Exhibit B.

[11]       Among his misleading use of data, Plaintiff compares the number of pending *U.S.* civil cases in the District of Columbia to *all* pending civil cases in the Eastern District of Pennsylvania, thereby skewing the caseload results through a comparison of apples to oranges. *See* Table C-1.  In fact, comparing the number of pending *U.S.* civil cases in each court as of March 31, 2005, reveals 1,827 cases in the District of Columbia, while the Eastern District of Pennsylvania had only 688 cases. *See id.*  This appropriate comparison demonstrates the misleading character of the data Plaintiff presents and his manipulation of data to weigh in favor of his desired forum.  Also relevant, but ignored by Plaintiff, the Eastern District of Pennsylvania has 22 judgeships whereas the District of Columbia has 15 judgeships.  A comparison of the number of pending civil cases per judgeship reveals that, as of September 30, 2005, there were a total of 11,603 pending cases in the Eastern District of Pennsylvania and 4,634 in the District of Columbia.  *See* Judicial Caseload Profile Reports for the Eastern District of Pennsylvania and the District of Columbia ("Caseload Reports"), *available at http://www.uscourts.gov/cgi-bin/cmsd2005.pl*, and attached hereto as Exhibit C.  The Eastern District of Pennsylvania had 527 cases pending per judgeship, and the District of Columbia had 309 cases pending per judgeship. *See id.*  Thus, a comparison of the most current available data reveals that the difference in total caseload between the two courts is significantly less than Plaintiff has represented.

12

District of Pennsylvania. The data supports that this case will likely be adjudicated to finality in significantly shorter time if transferred to the Eastern District of Pennsylvania.

The status of the courts' dockets should not prevent transfer of this action. Indeed, this consideration weighs in favor of a transfer.

**C.     Local Interest Weighs In Favor of Transfer.**

While there is a "local interest in having localized controversies decided at home," *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947), the District has no local interest in this controversy because, as explained herein, relevant connections between this action and the District are non-existent. Given that Defendants' corporate headquarters and principal places of business are located in Pennsylvania, and all of their conduct occurred in Pennsylvania, the Eastern District of Pennsylvania has a greater interest in this case than the District of Columbia. *See Am. Inst. of Physics* v. *Schmidt*, 322 F. Supp. 2d 28, 36 (D.D.C. 2004) (finding that Maryland had a greater interest in a case than the District because the defendant's "corporate offices are in Maryland and the majority of operative events occurred in Maryland"); *see also In re AT&T Access Charge Litig.*, No. Civ. A. 05-1360 ESH, 2005 WL 3274561, *5 (D.D.C. Nov. 16, 2005) (New Jersey had a much stronger interest in resolving the dispute because it had "a significant interest in allegations of fraudulent activity by its corporations and certainly has a greater interest than the District of Columbia, where very few of the alleged harms were manifested and most of the parties have virtually no ties.").

That Plaintiff has elected to sue in a representative capacity also supports a transfer. Because few putative class members reside in the District, while significantly more putative class members reside in Pennsylvania,[12] the local interest in adjudicating this case in Pennsylvania

---

[12]     (*See* Second DaSilva-Neto Aff. at ¶ 4.)

outweighs the interest of the District. *See DeLoach*, 132 F. Supp. 2d at 25 (transfer appropriate where "only a miniscule number of putative class members reside in the transferor forum"); *Deimer*, 1987 WL 9037, at *3 (where more putative class members reside in proximity to transferee forum, and no party plaintiff resides in transferor district, transfer is favored). The interest of "having localized controversies decided at home" is best served by transfer to the Eastern District of Pennsylvania because the Defendants' principal places of business are located there, their conduct occurred there, and significantly more putative class members reside there than in the District.

## V.    **CONCLUSION**

Plaintiff has no relationship with the District, his claims have no relevant connection to the District, and he brings this action in a representative capacity for a putative class. Consequently, Plaintiff's choice of forum should be given no weight. Moreover, considerations of convenience and the relevant public interest factors weigh substantially in favor of transfer. Defendants therefore respectfully submit that this action should be transferred to the Eastern District of Pennsylvania.

Dated: May 31, 2006                     Respectfully submitted,


                                        /s/ James F. Jorden
                                        James F. Jorden (D.C. Bar No. 37598)
                                        Raul A. Cuervo (D.C. Bar No. 463718)
                                        Stephen H. Goldberg (D.C. Bar No. 465113)
                                        JORDEN BURT LLP
                                        1025 Thomas Jefferson Street, N.W.
                                        Suite 400 East
                                        Washington, DC  20007-5208
                                        Telephone: 202-965-8100
                                        Facsimile:  202-965-8104

                                        Counsel for Defendants CIGNA Corporation
                                        d/b/a CIGNA Group Insurance and Insurance
                                        Company of North America

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Reply Memorandum In Support of Motion to Transfer Venue was served via electronic filing on this 31st day of May, 2006, upon the following:

Edgar N. James, Esq.
Amy B. Fettig, Esq.
JAMES & HOFFMAN, P.C.
1101 Seventeenth St., N.W., Suite 510
Washington, D.C. 20036

and by first class mail, postage paid, on the following:

Allan Kanner, Esq.
Conlee S. Whiteley, Esq.
KANNER & WHITELEY
701 Camp Street
New Orleans, LA 70130

Timothy Q. Purdon, Esq.
Monte L. Rogneby, Esq.
VOGEL LAW FIRM
200 North 3rd Street, Suite 201
P.O. Box 2097
Bismarck, ND 58502-2097

Perry Pearce Benton, Esq.
32516 Sandpiper Drive
Orange Beach, AL 36561-5728

/s/ James F. Jorden
James F. Jorden